WINTER, Circuit Judge:
 

 This appeal arises out of an adversary bankruptcy proceeding brought by the debt- or, JC’s East. Susan and Murray Traub appeal from the affirmance by Judge Ce-darbaum,
 
 Traub v. JC’s East, Inc.,
 
 No. 95 Civ. 1870 (MGC), 1995 WL 555765 at *4 (S.D.N.Y. Sept. 19, 1995) (hereinafter
 
 “District Court Opinion”),
 
 of Chief Bankruptcy Judge Lifland’s grant of summary judgment in favor of the debtor,
 
 JC’s East, Inc. v. Traub (In re JC’s East, Inc.),
 
 Adv.Proc.No. 94-8449A, slip op. at 7 (Bankr.S.D.N.Y. Aug. 23, 1994) (hereinafter
 
 “Bankruptcy Court Opinion”).
 
 We affirm and order appellants to show cause why they should not be sanctioned pursuant to Federal Rule of Appellate Procedure 38.
 

 The dispute arises out of the following events. On September 20, 1993, debtor JC’s East filed a voluntary petition for relief under Chapter 11 of the federal bankruptcy code, 11 U.S.C. §§ 1101-1174. Pending the approval of a reorganization plan, the debtor continued to operate its business, a restaurant on the Upper East Side of Manhattan called Lolabelle, until January 1994.
 

 Susan Traub became interested in buying the restaurant, and she, her father, and the debtor proposed a reorganization plan to the bankruptcy court. The plan involved two proposed contracts, the “Funding Agreement” and the “Management Agreement.” Under the Funding Agreement, Susan Traub was to be designated the sole stockholder of the debtor’s business in exchange for funding the reorganization plan, an obligation that her father, Murray Traub, personally guaranteed. Pursuant to the Management Agreement, Susan Traub was to assume responsibility for the management of the restaurant as of January 28,1994.
 

 The bankruptcy judge was highly skeptical of the plan. The proposed agreements provided for funding over time, and he feared that the Traubs would renege if the restaurant failed to prosper. Accordingly, at a hearing on January 25, 1994, the judge refused to approve the transaction. He stated:
 

 ... the Traub[s] ... are not making a representation that they waive or disclaim any rights based upon statements or their understanding of the condition of the restaurant. ... There is nothing in here that says that Ms. Traub has either done her due diligence or waives any due diligence, that she wants this property come hell or high water and she is not about to reconsider at some point in time after she has gained control of the operations.... I can conceive that there would be continuing lo[s]ses and would come to a point where she might find it economically feasible to walk away from the transaction. I don’t want to be left hanging, especially since all of the assets of the estate are being turned over.
 

 After discussion with attorneys for the Traubs and the debtor, the bankruptcy judge stated:
 

 Subject to a representation by the purchaser that there are no warrant[i]es and representations, that she has fully examined the operations and is satisfied to take the restaurant as is, where is, and understands that there may be substantial lo[s]ses continuing in the future, and that she has done her [ ] due diligence or they have done their due diligence and that they are the responsible parties to make the payments under the proposed Plan, I will approve the applications that are made here today.
 

 On January 27, 1994, in response to the bankruptcy court’s concerns and in order to induce the court’s approval of the transaction, Susan Traub executed an affidavit,
 
 *530
 
 bearing the caption of the bankruptcy proceeding. The affidavit stated:
 

 Susan TRaub, being duly sworn, deposes and says:
 

 1. That I am the “Buyer” as defined under a Funding Agreement and Management Agreement with the above captioned debtor, for which approval is sought as referred to in the Order to Show Cause and accompanying application heard by this court on January 25, 1994. This Affidavit is made in support of the application authorizing the debtor to enter into the Funding Agreement with your deponent as well as for approval of the Management Agreement.
 

 2. That prior to execution of the aforesaid agreements I conducted and completed a due diligence investigation of the assets, operation, financial records and other information relating to the debtor and its business and engaged my accountants to participate in such inquiry. I am satisfied with the results of the due diligence investigation. Except as specifically stated in the Bankruptcy Petition and funding agreement I am relying upon no representations, warranties, documents or information supplied by the debtor, or its principal, Michael Schwartz in connection with my decision to execute said agreements and consummate the transaction contemplated thereunder.
 

 3. I acknowledge that I am accepting the debtor’s business in a “w[h]ere [i]s” and “as is” condition and not subject to any further warranties or representations by the debtor or Michael Schwartz.
 

 4. I acknowledge that the debtor is required to file monthly operating statements in accordance with the guidelines of the United States Trustee’s office from the date I assume management of the debtor’s business and agree to undertake this task. Furthermore, in the event there are any losses from the operation of the debtor’s business I agree to utilize my own funds to pay such losses as they are incurred and will not permit any losses to accumulate.
 

 5. Based upon my own financial resources and as a result of my due diligence investigation I am confident of my ability to comply with my obligations under the funding agrément [sic] as well as provide the necessary capital to cover any losses which may occur from the date I assume management.
 

 6. In short, I have every intention to close and consummate the transaction contemplated under the Funding Agreement and Management Agreement.
 

 Murray Traub also executed a similarly captioned affidavit that stated:
 

 MuRRAY TRAub, being duly sworn, deposes and says:
 

 1. That I have read the accompanying Affidavit of my daughter, Susan Traub, and concur with the statements and representations contained therein.
 

 2. This affidavit is submitted in my capacity as a Guarantor of the obligations of Susan Traub in connection with the proposed management agreement and funding agreement which was [sic] submitted to this court for approval by Order to Show Cause on January 25,1994.
 

 The bankruptcy court approved the agreements on January 28, 1994.
 
 [1]
 
 Within a week after Susan Traub took over the restaurant, Lolabelle, the hostess and namesake of the restaurant, resigned. Within two months, the general manager, Manuel Pantones, also left. On May 6,1994, counsel for the Traubs confirmed the prescience of the bankruptcy judge by informing counsel for the debtor that “misleading and/or fraudulent” representations concerning the restaurant had been made by its principal and that, as a result, the Traubs would not honor their commitments.
 

 JC’s East thereafter brought an adversary proceeding against the Traubs for breach of the' Funding Agreement. The bankruptcy court granted the debtor’s motion for summary judgment and denied the Traubs’ motion for reargument. It stated that the Traubs were acting in bad faith but denied a
 
 *531
 
 motion for sanctions. On September 1,1994, the Traubs filed a motion for reargument and reconsideration of the bankruptcy court’s order granting summary judgment. After a hearing on October 19, 1994, the bankruptcy court denied the motion. The Traubs appealed from the bankruptcy court’s rulings to the district court, which affirmed.
 

 On appeal to this court, the Traubs contend that granting summary judgment was improper because material issues of fact exist concerning allegedly fraudulent representations about the financial condition of the restaurant made to them by the debtor’s principal. Appellants further assert the existence of issues of fact concerning whether the departure of Lolabelle and Pantones constituted a “material and adverse change affecting the business prospects or financial condition” of the restaurant, which, under the Funding Agreement, would excuse the Traubs from performance. Finally, appellants argue that issues of fact regarding the enforceability of Murray Traub’s guarantee of the Funding Agreement preclude summary judgment against him. Their arguments are entirely baseless.
 

 In granting relief to the debtor, both the bankruptcy court and the district court relied upon Susan Traub’s affidavit, which expressly states that she did not rely on “representations, warranties, documents or information supplied by the debtor, or its principal.”
 
 Bankruptcy Court Opinion
 
 at 5;
 
 see also District Court Opinion
 
 at * 3. Nevertheless, appellants contend that they did not waive the defense of fraud in the inducement under New York law, and that disputed issues of fact exist regarding representations made on behalf of the debtor to induce them to buy the restaurant. We agree, however, with the bankruptcy judge that “Susan Traub took an oath in the form of an affidavit and announced in the plainest language that she was not relying on any documents, warranties or representations as to the very matter by which she now claims she was defrauded.”
 
 Bankruptcy Court Opinion
 
 at 5. New York law supports the entry of judgment against the Traubs.
 
 See Danann Realty Corp. v. Harris,
 
 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 602, 157 N.E.2d 597, 599 (1959).
 

 Even if the statements in the Traubs’ affidavits do not constitute a waiver of fraud in the inducement under New York law applicable to private contracts, the result would not be altered. New York contract law does not govern the interpretation or legal effect of affidavits given to a federal bankruptcy court in order to induce the court to approve a reorganization plan. The bankruptcy judge had declined to approve the plan without such a waiver, and the affidavits were executed solely for the purpose of assuaging the court’s concerns. Any claim by the Traubs that their affidavits were not intended to waive such claims is itself an implied confession of fraud on the bankruptcy court. We decline to entertain what is in essence a bold claim by the Traubs that their fingers were crossed when they executed their affidavits.
 
 [2]
 

 Appellants next assert that material issues of fact exist regarding whether the departure of the two restaurant employees constituted a “material and adverse change affecting the business prospects or financial condition” of the business that would excuse the Traubs from performing under the agreements. The bankruptcy court declined to entertain this argument because appellants did not make it in opposition to the debtor’s motion for summary judgment but instead offered it only in their motion for reargument.
 
 [3]
 
 The bankruptcy court was well within its discretion in refusing to consider this argument.
 
 See
 
 Fed.R.Civ.P. 59; S.D.N.Y. Local Bankr.R. 13(j) (1986);
 
 superseded by
 
 S.D.N.Y. Local Bankr.R. 9023-1
 
 *532
 
 (1996);
 
 [4]
 
 S.D.N.Y. Local R. 3(j) (on a motion for reargument, “[n]o affidavits shall be filed by any party unless directed by the court”);
 
 United States v. Certain Funds,
 
 998 F.2d 129, 132 (2d Cir.1993) (purpose of local rule is to prevent party, on a motion for reargument, from “advancing] new facts, issues, or arguments”) (internal quotation marks and citations omitted). We also note that Lola-belle’s departure occurred almost immediately after Susan Traub took control. If her departure was that catastrophic, the time to raise it was in early February 1994, not in the motion for reargument. Indeed, in the March 6,1994 letter to counsel for the debtor stating that the Traubs would not honor their commitments, the Traubs’ attorney mentioned only misleading and fraudulent representations, not the departure of employees as their reason for reneging.
 

 Finally, appellants argue that genuine issues of material fact concerning Murray Traub’s liability preclude summary judgment. This argument is entirely meritless. In Section 14 of the Funding Agreement, Murray Traub “personally guarantee[d] the Buyer’s fulfillment and satisfaction in full of the Ongoing Obligations and any and all other obligations hereunder.” Murray Traub also executed his own affidavit, on January 25, 1994, “in [his] capacity as a Guarantor of the obligations of Susan Traub” in the agreements, in which he “concur[red] with the statements and representations” in Susan Traub’s affidavit.
 

 We address another issue
 
 sua sponte.
 
 This appears to be a frivolous appeal brought solely to delay the fulfillment of appellants’ obligations under the Funding Agreement. Appellants have reneged on sworn statements they made to induce bankruptcy court approval of the reorganization plan. The bankruptcy court found that appellants were acting in bad faith but declined to award sanctions in the adversary proceeding. Nevertheless, two appeals by the Traubs have followed, and the orderly course of the bankruptcy proceedings has been delayed. We therefore order that appellants and their attorney, who are in the best position to allocate responsibility for bringing this appeal,
 
 see United States v. Potamkin Cadillac Corp.,
 
 689 F.2d 379, 382 (2d Cir.1982), show cause within thirty days why they should not be sanctioned, with joint and several liability, in the amount of $10,000 and double costs pursuant to Federal Rule of Appellate Procedure 38. Fed.R.App.P. 38. (“If a court of appeals determines that an appeal is frivolous, it may, after ... notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.”);
 
 Knipe v. Skinner,
 
 999 F.2d 708, 711 (2d Cir.1993).
 

 We affirm the judgment and order that the mandate be issued forthwith. The sanctions issue is severed and will be resolved after appellants have had an opportunity to show cause why they should not be sanctioned.
 

 [1]
 

 . Chief Judge Lifland apparently was not available, and a different bankruptcy judge signed the order approving the transaction.
 

 [2]
 

 . Appellants make much of the fact that the approval was by a different judge.
 
 See supra
 
 Note 1. We fail to see any significance whatsoever in that fact.
 

 [3]
 

 . The departures of the two employees were mentioned in an affidavit in opposition to the motion for summary judgment. However, the departures were not touted in any opposition papers as vitiating the Traubs’ obligations under the Funding Agreement until the motion for rear-gument. In any event, the argument is frivolous on the merits.
 

 [4]
 

 . The Southern District of New York bankruptcy rule then in effect, Rule 13(j), tracked the language of Local Rule 3(j). It was superseded by Rule 9023-1 in the new local bankruptcy rules, which became effective on March 28, 1996.